IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON SOLTIS, | : |
| Plaintiff, | : |
| v. | : 3:18-CV-01780 |
| | : (JUDGE MARIANI) |
| CVS PHARMACY, INC and | : |
| JOSEPH LECH | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. FACTUAL BACKGROUND

On December 11, 2024, the Court held a telephonic conference call with the *pro se* Plaintiff, counsel for the Defendants, and counsel for non-parties and Plaintiff's former counsel The Gold Law Firm, P.C., Sidney Gold, Esq. and Neelima Vanguri, Esq. (Doc. 74). As a result of the conference call, the Court rescheduled the evidentiary hearing regarding Plaintiff's motion to re-open the case, (Doc. 47), and Defendants' motion to enforce settlement, (Doc. 58), to January 22, 2025. (*Id.* at ¶ 1). The Court further ordered Plaintiff to "file a letter on CM-ECF setting forth her position regarding the waiver of the attorney-client privilege in order to permit Mr. Gold, Esq. and Ms. Vanguri, Esq. to testify concerning confidential and/or privileged communications at the upcoming evidentiary hearing." (*Id.* at ¶ 2). The Order further provided that "[i]f necessary, counsel for Defendants and former

Plaintiffs' counsel may respond to Plaintiffs' letter within 7 days of its filing of record." (*Id.* at ¶ 3).

On December 17, 2024, Plaintiff filed a letter with this Court stating that she **"DOES NOT WISH to waive Attorney-Client Privilege concerning confidential and/or privileged communications in the upcoming evidentiary hearing**." (Doc. 75) (emphasis in original). In response, counsel for the Defendants submitted a letter on December 23, 2024. (Doc. 76). In that letter, Defendants states that "Plaintiff waived the attorney-client privilege the moment Plaintiff disclosed the substance of the alleged attorney-client privileged communications to third parties via their publication on the public docket, to this Court, and to counsel for the Defendants." (*Id.* at 2). Defendants further submit that:

> Plaintiff publicly disclosed alleged legal advice she was given by her attorney about the Term Sheet as part of that attorney's representation of her, and further, has put her communications with her former counsel directly at issue with regard to the pending motions when she claimed that the case should be re-opened and the settlement not enforced because of alleged statements by her former counsel and due to fraud and duress allegedly caused by her former counsel.

(*Id.* at 2-3). Accordingly, Defendants ask this Court to conclude:

> that the attorney-client privilege between Plaintiff and her former counsel has been waived, at a minimum, with regard to the communications referenced in the Plaintiff's prior filing as well as with regard to any communications that occurred between Plaintiff and her former counsel during and immediately following the November 13, 2019 mediation about any and all non-monetary settlement terms that may or may not have been discussed or negotiated during the mediation, the Term Sheet, the contents of the Term Sheet, and the Plaintiff's review and/or execution of the Term Sheet. In the alternative, should the Court find that the attorney-client privilege has not been waived, Defendants respectfully request that all references to any communications between Plaintiff and her former counsel be stricken from the documents filed to date by Plaintiff

2

and that Plaintiff be precluded going forward from offering any testimony or argument about any communications between her and her former counsel.

(*Id.* at 3-4).

The two documents referenced by Defendants to support their waiver contention are Documents 62 and 68. Document 62 is a response filed by Plaintiff opposing a motion by Defendants to permit certain witnesses to appear remotely at the hearing. In that document, Plaintiff states the following:

> In terms of the importance of credibility, the Plaintiff urges the court to recognize the coercive and deceptive circumstances in which Plaintiff was ordered by her counsel, Neelima Vanguri to sign the Term Sheet (TS). Vanguri claims that the Plaintiff (Ms. Soltis) agreed to the entire terms of the TS because she agreed to a monetary settlement and thereby a dropping of the case. What Vanguri fails to report is the fact that during the entirety of the mediation session, the only negotiations and the only discussions concerned the dollar amount and the case being dropped. Once that was settled, the mediation session was declared over by the mediator. . . . Atty. Ripple's role and presence in the room is not clear to Ms. Soltis, but at one point he appeared at the door with papers that could have been the TS. Atty. Gold had left before the mediation session concluded, saying he had to be heading back to Philadelphia. Ms. Soltis and her husband, Larry Sparano had their coats on and were heading out the outer door when Vanguri suddenly called out to Ms. Soltis, saying 'You have to sign something.' Vanguri then presented Ms. Soltis with the TS. Other than the dollar amount, the additional terms of the sheet were not discussed, negotiated or even mentioned during the mediation session. When Ms. Soltis objected to the additional terms, she was told sternly by Vanguri that it was 'standard,' and since she had already agreed to the dollar amount, she was legally required to agree to all the other terms on the TS, despite the fact that she had never seen them before, nor had they been presented to her before. Ms. Soltis asked Vanguri if she could take the TS home so she could study it before making any decision to sign it. Vanguri told her 'No, you have to sign it.' Ms. Soltis then asked if she or Vauguri could 'go talk with Atty. Ripple.' Vanguri responded, 'There's nothing to talk about. You have to sign it.' Ms. Soltis then asked if she could talk with Atty. Centini and again the answer was 'no' and that she had already left. Vanguri continued to repeat 'This is standard' and that 'It's in all the contracts like this,' and that it 'didn't have to be negotiated.' Vanguri added further pressure on Ms. Soltis by declaring that she (Vanguri) was 'an officer of the court' and

3

> Ms. Soltis had no choice but to sign it because she already agreed to a financial settlement through which the case would then be dropped. Feeling intimidated, bullied, and under duress, Ms. Soltis reluctantly signed the Term Sheet, feeling she had no other choice. During all this time, Ms. Soltis suffered from an active spinal fluid leak and brain swelling, which added to her stress and caused difficulty in concentrating. Vanguri, Gold, Ripple were well aware of this serious life-threatening medical condition. . . . In fact, the condition caused Ms. Soltis to shake visibly during the mediation session. This was clearly observed by Vanguri who coldly asked Ms. Soltis, 'What's wrong with you?' Ms. Soltis told her what was wrong, but Vanguri seemed indifferent.

(Doc. 62 at 3-6). In Document 68, entitled "Plaintiff's Answer to Defendant's Joint Motion to Enforce Settlement," Plaintiff states the following: "Plaintiff's signature on the Settlement Term Sheet (TS) was not reflective of what was agreed to in the mediation on November 13, 2019." (Doc. 68 at 1). She furthered stated "Plaintiff's signature of the Settlement TS was secured by CVS's counsel and her own counsel's undue influence, coercion, and duress which forced her to sign unwillingly and unknowingly and not voluntarily." (*Id.*). "Plaintiff believes that the actions of her own counsel and counsel for CVS comprised a conspiracy of fraud and misrepresentation." (*Id.*).

## II.   ANALYSIS

Defendants ask this Court to find that Plaintiff waived the attorney-client privilege by engaging in certain conduct. First, Plaintiff waived the attorney-client privilege by voluntarily disclosing privileged communications to third parties by filing the alleged substance of those communications on the public docket. Second, Defendants claim Plaintiff waived the attorney-client privilege by placing her communications with her former attorneys concerning the settlement agreement directly at issue in both the pending motions to re-

open and to enforce settlement. Indeed, Plaintiff goes so far as to accuse her former attorneys of conspiracy to commit fraud, undue influence, coercion, misrepresentation, and duress, among other things. (Doc. 68 at 1). Because Plaintiff unquestionably disclosed privileged communications with her former attorneys to third parties by filing certain documents to the public CM/ECF system, Plaintiff has waived her privilege with respect to those communications. Moreover, by placing her former attorneys' communications with her directly at issue in both her motion to re-open case and her opposition to Defendants' motion to enforce settlement, Plaintiff has further waived her claims of attorney-client privilege. The Court could not rule on either motion without receiving testimony from Plaintiff's former counsel, and it is Plaintiff herself that placed these communications directly at issue in this litigation by accusing her former attorneys of, among other things, serious misconduct in connection with the alleged settlement agreement. Both the law and principles of fairness require a finding of a waiver.

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged person (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal citation and quotation marks omitted). "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d

1414, 1423 (3d Cir. 1991). "The privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id.* at 1423-24 (internal citation and quotation marks omitted) (emphasis in original). "Accordingly, voluntarily disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege." *Id.* at 1424. "Consequently, it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived." *Id.*; *see also In re Teleglobe*, 493 F.3d at 361 ("Disclosing a communication to a third party unquestionably waives the privilege. A harder question is whether the waiver also ends the privilege as to any related but not disclosed communications. In answering this question, our touchstone is fairness.").

"The attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct." *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996) (internal citation and quotation marks omitted); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[A] party can waive the attorney client privilege by asserting claims that put his or her attorneys' advice in issue in the litigation.").

In this matter, both by publicly disclosing the alleged substance of her former attorneys' communications to third parties, and by placing her former attorneys' communications with her directly at issue in both her motion to re-open case and her

6

opposition to Defendants' motion to enforce settlement, Plaintiff has further waived her claims of attorney-client privilege and both the law and principles of fairness require this result.[1] *See Livingstone*, 91 F.3d at 537 (the plaintiff's "assertion that she did not appreciate the release-dismissal agreement's legal implications is tantamount to a claim that her attorney did not give her accurate legal advice. It would be unfair to allow her to make this claim without permitting the opposing parties to investigate her attorney's version of the relevant events."); *see also Abbott v. Tacconelli's Pizzeria, LLC*, Civil No. 10-1901, 2013 WL 393491, at *1 n.3 (D.N.J. Jan. 30, 2013) ("At oral argument, all counsel expressly agreed, and the Court found, that Plaintiff had waived the privilege as to her communications with Mr. Brady about the settlement because she voluntarily placed those communications in dispute and the communications are essential to deciding the present motion [to enforce settlement agreement]").

## III.   CONCLUSION

As discussed, the Court agrees with Defendants and concludes that the attorney-client privilege between *pro se* Plaintiff and her former counsel has been waived regarding

---

[1] "As many courts have noted, the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation. . . . Where one party attempts to utilize the privilege as an offensive weapon, selectively disclosing communications in order to help its case, that party should be deemed to have waived the protection otherwise afforded it by the privilege it misused." *Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003). Here, Plaintiff is in effect attempting to use the privilege as both a sword (to support her motion to re-open case and oppose Defendants' motion to enforce settlement by accusing her former attorneys of serious misconduct) while at the same time attempting to use it as a shield (by refusing to waive the privilege with respect to her former counsel's testimony at the upcoming evidentiary hearing). Plaintiff cannot have it both ways.

the alleged communications referenced in the Plaintiff's prior filings, (Docs. 62, 68), as well as with regard to any communications that occurred between Plaintiff and her former counsel during and immediately following the November 13, 2019 mediation about any and all non-monetary settlement terms that may or may not have been discussed or negotiated during the mediation, the Term Sheet, the contents of the Term Sheet, and the Plaintiff's review and/or execution of the Term Sheet.  As for other matters potentially covered by the attorney-client privilege, the Court will address these on a question-by-question basis at the evidentiary hearing, should either party raise an objection.  A separate Order follows.

                                                                                                                        */s/ Robert D. Mariani*
                                                                                                                        Robert D. Mariani
                                                                                                                        United States District Judge