IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON SOLTIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:18-CV-01780 |
| | : | (JUDGE MARIANI) |
| CVS PHARMACY, INC and | : | |
| JOSEPH LECH | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Presently before the Court are two motions.  In the first motion, *pro se* Plaintiff

Sharon Soltis ("Plaintiff" or "Soltis") moves to reopen/reinstate this case.  (Doc. 47).  In the

second motion, Defendants CVS Pharmacy, Inc. and Joseph Lech (together, "Defendants"

or "CVS") move to enforce a purported settlement agreement allegedly entered into by the

parties.  (Doc. 58).  For the reasons that follow, the Court will grant Plaintiff's motion to

reopen/reinstate and will deny CVS's motion to enforce.[1]

## I.    INTRODUCTION & PROCEDURAL HISTORY

On September 11, 2018, Plaintiff filed a complaint against Defendants alleging

violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human

_____

[1]    This Court has jurisdiction over the claims asserted in Plaintiff's complaint pursuant to 28 U.S.C. §
1331 and 28 U.S.C. § 1367(a).

Relations Act, 43 P.S. § 951 *et seq.* (Doc. 1). The Court held a Case Management

Conference on December 11, 2018, and the parties were referred to mandatory mediation

before Shelly Centini, Esq. (Doc. 17). On August 8, 2019, the parties filed a joint motion for

an extension of time to complete discovery, (Doc. 19), which the Court granted. (Doc. 20).

On November 6, 2019, Plaintiff's attorneys, Neelima Vanguri and Sidney L. Gold,

filed an emergency motion to withdraw as attorneys and stay the action for ninety days.

(Docs. 22-23). In that motion, Plaintiff's counsel represented that "they must withdraw for

professional responsibility reasons." (Doc. 22, ¶ 3). More specifically, Plaintiff's counsel

stated that "we believe that it would be a conflict of interest for the firm to represent the

Plaintiff during said mediation." (Doc. 23 at 1). The Court held a telephonic conference on

November 12, 2019, and subsequently denied the motion, without prejudice, on November

13, 2019. (Doc. 26). That same day, the mandatory mediation was held.

On November 14, 2019, the Court received a report from Mediator Shelley Centini

informing the Court the parties had reached a settlement and asked the Court to issue a 60-

day Order. (Doc. 29). The same day the Court issued its standard 60-day Order (which

was docketed the following day) and provided:

> **AND NOW, THIS 14TH DAY OF NOVEMBER 2019**, upon receipt of Attorney Shelley Centini's letter informing the Court that the above-captioned action has settled at mediation (Doc. 27), **IT IS HEREBY ORDERED THAT** this action is **DISMISSED** without costs and without prejudice to the right, upon good cause shown within sixty (60) days, to reinstate the action if settlement is not consummated.

(Doc. 28) (the "Dismissal Order").  The Dismissal Order was conditional and entered pursuant to Federal Rule of Civil Procedure 41(a)(2).  *See* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may dismissed at the plaintiff's request only by court order, on terms that the court consider proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.").  As the Order makes clear, the Court dismissed this case without prejudice and did not retain jurisdiction to enforce any settlement agreement.  Nor did the Order direct the Clerk of Court to close the case.

On January 13, 2020, Plaintiff, proceeding *pro se* filed a motion to "reopen/reinstate case." (Doc. 30).  That same day, Plaintiff's then counsel, Sidney L. Gold, filed a letter with the Court.  In the letter, Mr. Gold stated "[t]he terms of the confidential settlement agreement have not yet been agreed to.  In consideration thereof, the undersigned respectfully requests Your Honor maintain jurisdiction over this matter for an additional sixty (60) days, or until March 13, 2020." (Doc. 31).  The Court extended the time to reinstate this action for an additional sixty days—until March 13, 2020.  (Doc. 32).

On February 14, 2020, Plaintiff's counsel filed a second motion to withdraw and moved to extend jurisdiction for an additional sixty days to conclude settlement.  (Doc. 33).  The Court deferred ruling on the motion to withdraw but extended the time to reinstate the action to May 12, 2020.  (Doc. 39).  On May 7, 2020, the Court granted Plaintiff's then counsel's motion to withdraw.  (Doc. 40).  In that Order, the Court extended "the time to

reinstate the action if settlement is not consummated" for an additional sixty days—until July 13, 2020.  (*Id.*, ¶ 2).

On July 10, 2020, Plaintiff, proceeding *pro se*, filed a motion to stay the Dismissal Order for an additional ninety days.  (Doc. 42).  The Court granted the motion and again extended the time to reinstate the action for an additional ninety (90) days, until October 12, 2020.  (Doc. 43).  On October 6, 2020, Plaintiff, proceeding *pro se*, filed a motion for extension of time, (Doc. 44), which the Court granted on November 6, 2020.  (Doc. 46).  The Court granted Plaintiff's motion and issued the following Order:  "The Court's Order extending the time to reinstate the action if settlement is not consummated and allowing Plaintiff to secure new counsel is **EXTENDED** for a period of additional **90 days**, i.e., until **January 10, 2021.  No further extensions of time to reinstate the action will be granted**."  (Doc. 46) (emphasis in original).

On January 8, 2021, Plaintiff proceeding *pro se* filed the instant Motion to Reopen/Reinstate.  (Doc. 47).  At that time, the case was administratively closed as of November 15, 2019.  Plaintiff's timely January 8, 2021, *pro se* motion to reopen/reinstate remained pending.  The Court did not rule on Plaintiff's motion and did not file an order dismissing the case with prejudice.  On January 12, 2021, CVS filed an Objection to Plaintiff's still pending motion to reopen/reinstate this case.  (Doc. 48).  In that document, Defendants represented they "intend to file a motion with the Court to enforce the settlement reached at the court ordered mediation on November 13, 2019 and memorialized in the

Term Sheet." (*Id.*, ¶ 13).  However, CVS did not file a motion to enforce until August 30, 2024.  (Doc. 58).  No docket entries were filed from January 22, 2021, until the Court issued an Order on August 2, 2024.  Neither Plaintiff nor CVS filed any motion or document with the Court for the next three-and-a-half-years.  On August 2, 2024, the Court issued an Order directing *pro se* Plaintiff to file a status report.  (Doc. 50).  Plaintiff timely complied, (Doc. 51), and subsequently Defendants filed a joint motion to enforce on August 30, 2024. (Doc. 58).

On January 22, 2025, Plaintiff retained new counsel, and the Court held an evidentiary hearing and heard arguments regarding both pending motions.  (Doc. 88).  After the hearing, on January 23, 2025, the Court issued an Order directing the parties to submit a joint letter indicating their willingness to attend a second mediation before a Magistrate Judge.  (Doc. 84).  The parties timely complied, (Doc. 85), and the Court subsequently issued an Order referring the case to mediation before Chief Magistrate Judge Daryl Bloom. (Doc. 86).  The mediation did not result in any settlement.  (Doc. 92).  The parties both filed post-hearing briefs.  (Doc. 93, 94, 96).  The Court ordered supplemental briefing to address whether it had subject matter jurisdiction to address CVS's motion to enforce and both parties timely complied.  (Docs. 97-98).  The motions have been fully briefed and ripe for disposition.

## II.    <u>FACTUAL BACKGROUND</u>

At the hearing, the Court heard testimony and received evidence from:  Plaintiff Sharon Soltis, Soltis' former counsel Neelima Vanguri and Sidney Gold, and Plaintiff's husband, Lawrence Sparano, who was also present during the mediation.  (Doc. 88) ("Tr."). The Court also heard testimony from Raymond Ripple, CVS's former counsel, who was also present at the mediation.  Tr. at 144:25-199:8.  The Court also received exhibits from the parties.  (Doc. 82).  CVS seeks to enforce a term sheet (the "Term Sheet") purportedly executed on November 13, 2019.  The Term Sheet, (Doc. 58-2), is signed by Plaintiff, Plaintiff's counsel, a representative from CVS, counsel for CVS, Joseph Lech and counsel for Joseph Lech.  It provides as follows:

### <u>TERM SHEET FOR SETTLEMENT IN SHARON SOLTIS v. CVS PHARMACY et al.</u>

On November 13, 2019, Plaintiff Sharon Soltis ("Plaintiff" or "Soltis") and Defendants CVS Pharmacy, Inc. and Joseph Lech ("Defendants") participated in a mediation and agreed to a settlement on terms including but not limited to those terms set forth below.

1.    Defendants agree to pay Plaintiff a sum of [redacted] in full and final settlement of this matter, inclusive of attorneys' fees.  Payment to Plaintiff shall be for non-wages and be accompanied by a Form 1099.  Plaintiff agrees to be responsible for any tax obligation associated with the settlement payment and agrees to indemnify Defendants for any tax liability associated with the settlement payment.

2.    Plaintiff agrees to dismiss the case against Defendants with prejudice.

3.  Plaintiff agrees to release Defendants against all claims whatsoever that were asserted or could have been asserted in the lawsuit.

4.  Soltis hereby acknowledges, understands, and agrees that she will not be considered for employment by Defendants or any of their parents, subsidiaries, divisions or sister corporations in the future.  Soltis hereby covenants that she shall not apply for or otherwise seek employment with Defendants or any of their parents, subsidiaries, divisions or sister corporations.  Soltis further agrees that, in the event she is employed by any company that is acquired by Defendants or any of their parents, subsidiaries, divisions or affiliates corporations, she shall resign from said employment immediately upon the acquisition, and that should Soltis fail or refuse to do so, Defendants may terminate her employment and Soltis shall have no recourse against Defendants or their parents, subsidiaries, divisions or affiliate corporations.

5.  Soltis agrees to keep all the terms and conditions of this Agreement strictly confidential. Soltis represents that she has not disclosed and agrees that she will not disclose the existence of this Agreement or any of the terms or conditions of this Agreement to anyone other than her attorney, her spouse and her tax or financial advisor, or as may be required pursuant to legal process.  Soltis further agrees to take reasonable steps to ensure that any information concerning this Agreement which is disclosed to her attorney, her spouse and her tax or financial advisor will not be disclosed to any other third party, including but not limited to informing such persons that the terms and conditions of this Agreement are strictly

7

confidential and that they may not be disclosed or discussed with anyone else.  If Defendants prove Soltis violated the confidentiality obligations, Soltis will be required to repay to Defendants 50 percent of the total Settlement Payment as liquidated damages.

6.  Soltis agrees to refrain from participating in any activity or making any statements that are calculated to damage or have the effect of damaging the business or reputation of Defendants and/or any officer, director or employee of Defendants or any of their subsidiaries. Lech agrees to refrain from participating in any activity or making any statements that are calculated to damage or have the effect of damaging the reputation of Plaintiff.  CVS agrees to instruct [redacted] and [redacted] to refrain from participating in any activity or making any statements that are calculated to damage or have the effect of damaging the reputation of Plaintiff.

7.  The Settlement Agreement and Release shall contain a neutral reference Provision.  The precise terms of this reference shall be agreed upon by counsel for Mr. Lech and Plaintiff.  Plaintiff and Defendants agreed to sign a Settlement Agreement and Release incorporating these terms. (Doc. 58-2 at 2-3)

The Term Sheet differed significantly from the Settlement Agreement and Release and Plaintiff refused to sign the Settlement Agreement and Release.  Def. Ex. D[2], (Doc. 30 at 1-4) (January 13, 2020 filing by *pro se* Plaintiff noting differences between Term Sheet

---

[2]    The Court will refer to the Exhibits received into evidence at the January 22, 2025, evidentiary hearing as either "Def Ex." or "Pl. Ex."  (Doc. 82).

and Settlement Agreement and Release); Def. Ex. H, (Doc. 47 1-3); Pl. Ex. 2 (unsigned

Settlement Agreement & Release differing significantly from Term Sheet). Plaintiff's former

counsel Neelima Vanguri testified that the Settlement Agreement and Release Soltis

refused to sign was "substantially larger than the term sheet."[3] Tr. at 37:6-12. Ms. Vanguri

further testified that, after the execution of the Term Sheet, she prepared a redline of the

Settlement Agreement & Release. Tr. at 61:13-24; 66:2-14.

Plaintiff Soltis credibly testified that she did not discuss any non-monetary terms with

her counsel during the mediation, only a monetary figure. Tr. at 210:22-212:20; 246:1-14;

259:22-260:7. She further testified that, although she signed the Term Sheet, her then

counsel, Neelima Vanguri, told her she had to sign it because she agreed to a monetary

figure in exchange for dropping her case and the mediation had already concluded. Tr. at

213:5-214:11; 216:9-11; 264:24-265:2. Principal among Plaintiff's many concerns with the

---

[3]     Given that over five years had elapsed between the November 13, 2019, mediation and the January 22, 2025, hearing, Ms. Vanguri, understandably, either could not recall or did not remember many of the facts germane to both motions. Tr. at 9:6-8; 11:11-14; 11:23-24; 12:8-18, 13:9-12; 14:7-10; 14:19-24; 14:25-15:16; 17:25-18:9; 20:7-18; 21:8-24; 21:25-22:7; 22:15-17; 23:4-9; 26:2-8; 27:2-14; 28:3-9; 28:20-29:2; 29:17-20; 29:21-30:4; 30:8-12; 31:12-24; 34:16-19; 35:1-8; 35:18-22; 38:14-18; 38:19-39:8; 41:1-5; 41:20-23; 45:6-9; 46:4-16; 51:23-52:2; 66:19-67:16; 77:14-17; 82:5-7; 87:18-20; 88:6-11; 102:13-19; 104:20-21; 104:25-105:12; 106:19-22; 109:1-6. Mr. Gold similarly could not remember or could not recall many of the facts germane to both pending motions. Tr. at 114:11-14; 114:19-24; 119:6-9; 133:21-134:3; 139:14-24; 201:14-19. The same applies to Mr. Ripple, counsel for CVS, although he appeared to recall more than both Ms. Vanguri and Mr. Gold. Tr. at 145:16-17; 148:8-18; 149:13-14; 151:17-152:11; 152:15-20; 152:22-153:6; 154:2-5; 154:11-20; 155:6-12; 163:11-14; 168:23-25; 175:20-176:3; 189:6-22; 193:8-14; 196:7-14; 196:15-196:15-197:2. Moreover, the Court recognized during the hearing that Ms. Vanguri had "significant lapses of memory with respect to what she did in this case," Tr. at 85:8-10, as did counsel for CVS. Tr. at 86:4-5. Had CVS filed its motion to enforce earlier, as it represented it would in a January 27, 2020 email from Raymond Ripple to Plaintiff's then counsel, (Pl. Ex. 3), such gaps in memories would likely have not occurred.

Term Sheet was the "no-work provision" and other non-monetary terms. Tr. at 215:5-216:8; 218:21-219:3; 220:23-221:16; 222:2-6. Plaintiff, a licensed pharmacist, was concerned that the no-work provision would force her to resign from her employment in the event her employer was acquired by CVS. *Id.* She also testified about her other concerns with the non-monetary terms in both the Term Sheet and the Settlement Agreement & Release (the latter of which she refused to sign). Tr. at 229:13-23.

Plaintiff also credibly testified that, after the conclusion of the mediation, she was given approximately fifteen minutes to review the Term Sheet prior to signing and that her attorneys told her she had to sign because she agreed to a dollar amount. Tr. at 216:12-217:7; 247:23-248:8. The testimony of Plaintiff's husband, who was also present at the mediation, confirmed Plaintiff's testimony. Tr. at 271:13-272:7; 279:2-280:5. Plaintiff further testified that she asked Ms. Vanguri to take home the Term Sheet to review, but she refused and told her she had to sign. *Id.*; Tr. at 226:4-5. Subsequently, Plaintiff refused to sign the Settlement Agreement & Release because it differed so significantly from the Term Sheet. Tr. at 225:2-22; 226:15-227:18.

## III.    ANALYSIS

### A.    Motion to Reopen/Reinstate

Plaintiff seeks to reopen/reinstate this case because settlement had not yet been consummated. (Doc. 47). Defendants oppose Plaintiff's motion. (Docs. 48, 94). As the Court sees it, there are two ways to treat Plaintiff's *pro se* motion to reopen/reinstate. The

first approach would treat the motion as one seeking reopen/reinstate this action upon a showing of good cause if settlement is not consummated. This approach assumes that the Dismissal Order was not final and was conditional—that is, that the Court retained jurisdiction to reinstate the action upon a showing of good cause if settlement is not consummated within the specified time-period. The second approach would be to construe the Dismissal Order as a final judgment, order, or proceeding under Rule 60(b). The Court finds the first approach more appropriate given the terms of the Dismissal Order, but it will discuss both more fully below. Under either the more lenient "good cause" standard or applying the more strict "extraordinary circumstances" under Rule 60(b)(6), Plaintiff is entitled to relief and the Court will reinstate/reopen this case.

### 1. Plaintiff Shows Good Cause to Vacate the Dismissal Order

The Dismissal Order was entered pursuant to Federal Rule of Civil Procedure 41(a)(2) and contained certain conditions allowing Plaintiff to reinstate this action upon satisfying those conditions. *See Carroll v. E One*, *Inc.*, 893 F.3d 139, 146 (3d Cir. 2018) ("Under Rule 41(a)(2), the District Court was permitted to dismiss the case 'on terms that the court considers proper.'") (quoting Fed. R. Civ.P. 41(a)(2)). Specifically, the Dismissal Order provided:

> **AND NOW, THIS 14TH DAY OF NOVEMBER 2019**, upon receipt of Attorney Shelley Centini's letter informing the Court that the above-captioned action has settled at mediation (Doc. 27), **IT IS HEREBY ORDERED THAT** this action is **DISMISSED** without costs and without prejudice to the right, upon good cause shown within sixty (60) days, to reinstate the action if settlement is not consummated.

(Doc. 28).  The Dismissal Order closed this case, subject to certain conditions, requiring good cause to reinstate this action if settlement is not consummated.  The Dismissal Order did not direct the Clerk of Court to close this case; nor did the Order retain jurisdiction to enforce any settlement agreement.  The Court thereafter subsequently extended the time to reinstate this action several times and gave Plaintiff a hard deadline of January 10, 2021. For whatever reason, Plaintiff's timely motion to reopen/reinstate filed on January 8, 2021, was not ruled upon.  And CVS never timely filed a motion to enforce, as it represented it would in the January 12, 2021, filing objecting to Plaintiff's *pro se* motion to re-open/reinstate.  (Doc. 48); (Pl. Ex. 3).

"For *voluntary* dismissals, the default rule is that a plaintiff's first dismissal is without prejudice.  Fed. R. Civ. P. 41(a).  To overcome that default rule, the plaintiff's notice of dismissal or the district court's order entering the voluntary dismissal must state [ ] otherwise."  *Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020) (emphasis supplied) (citations and quotation marks omitted).  "A dismissal with prejudice operates as an adjudication on the merits, so it ordinarily precludes future claims." *Id.* at 611 (internal citation and quotation marks omitted).  "Conversely, a dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have a claim-preclusive effect."  *Id.* (internal citations and quotation marks omitted).

Here, the Dismissal Order dismissed this case without prejudice and conditioned the dismissal upon a showing of good cause if settlement was not consummated. The Dismissal Order initially provided 60 days for Plaintiff to file a motion to reopen/reinstate, which the Court subsequently extended until January 10, 2021. Thus, Plaintiff had until January 10, 2021 to show good cause to reinstate this action if settlement had not been consummated. The Court never issued an Order dismissing this case with prejudice. Thus, applying *Papera*, the Dismissal Order was without prejudice and contingent upon the right to show good cause if settlement had not been consummated. But in that case, the plaintiffs (unlike Plaintiff here) did not file any motion to reopen/reinstate within the specified time-period set forth in the dismissal order. *Papera*, 948 F.3d at 612 (noting that plaintiff "failed to move to reopen during the specified period for doing so"). That makes this case distinguishable from *Papera* because it is undisputed that Plaintiff's timely *pro se* motion to reopen/reinstate was filed within the specified time-period. Thus, the issue is whether Plaintiff's *pro se* January 8, 2021, motion to reopen/reinstate sets forth good cause to reopen/reinstate this litigation because settlement has not been consummated.

Viewing the totality of the circumstances, it is apparent that settlement has not been consummated in this matter. Moreover, CVS never filed any motion to enforce the settlement agreement until almost five years after the parties are alleged to have entered into an enforceable and binding contract. Accordingly, the Court finds that good cause

exists to reinstate Plaintiff's claims.[4]  *See Lakkis v. Lahovski*, 2016 WL 4059672, at \*4 (M.D.

Pa. July 27, 2016) ("Because the Court concludes that settlement has not been

consummated between Plaintiff and Defendant ... the Court finds that good cause exists to

reinstate the action."); *see also Patel v. Cigna Corp.*, 2004 WL 7323571 at \*4 (D.N.J. Dec.

17, 2004) (granting *pro se* plaintiff motion to vacate dismissal order concluding that "good

cause" has been "satisfied by proof that plaintiff's attorney did not have authority to settle a

dispute on his client's behalf").  This case is similar not only because the same issues and

same counsel are present here, but just like this case, the *pro se* plaintiff in *Patel* "was

apparently estranged from Mr. Gold and was non-cooperative, as shown by Mr. Gold's first

motion to withdrawal."  *Id.* at \*5.  In concluding, the Court found:

> Mr. Patel's relationship with his counsel had been deteriorating for months prior to the
> purported settlement agreement being made.  If nothing else, Plaintiff and his counsel
> were having difficulty communicating.  Against that background, it is not surprising that
> the settlement at issue was borne out of a misunderstanding between Plaintiff, his
> wife, and his attorneys.  That sort of confusion warrants nothing more than the
> purported settlement to be vacated.

*Id.* at \*6.  Similarly reasoning applies here and compels a finding that Plaintiff has shown

good cause to reopen/reinstate her action because settlement has not been consummated.

The Dismissal Order is nearly identical to the dismissal order the Third Circuit

considered in *Shaffer v. GTE North, Inc.*, 284 F.3d 500 (3d Cir. 2002).  There, the Third

Circuit found that a reinstatement of action "which revives the underlying claim and sends

---

4        "Good cause is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed
on a litigant . . . to show why a request should be granted or an action excused."  *Joseph v. Hess Oil Virgin
Islands Corp.*, 651 F.3d 348, 351 (3d Cir. 2011) (quoting *Black's Law Dictionary* 251 (9th ed. 2009).

the litigants back to the original battlefield, is totally different from the enforcement of the terms of a settlement agreement because one of the parties has not complied with those terms." *Id.* at 503.  The Court finds that Plaintiff has set forth good cause and, accordingly, the Court will vacate the Dismissal Order and reinstate this action.  Plaintiff's underlying claims are reinstated and the Court will send "the litigants back to the original battlefield." *Id.* Accordingly, Plaintiff's motion to reopen/reinstate will be granted.

### 2.  <u>To the Extent it Applies, the Court Will Grant Relief Under 60(b)(6)</u>

In the alternative, the extent that Plaintiff's *pro se* motion should be construed a Rule 60(b) motion because the Dismissal Order was a final judgment, order, or proceeding, the Court will treat Plaintiff's *pro se* motion as seeking relief from the Dismissal Order pursuant to Federal Rule of Civil Procedure 60(b).  *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (district courts are to liberally construe *pro se* litigants filings).  Under that standard, and mindful that Plaintiff was proceeding *pro se* at the time of the filing, the Court will grant Plaintiff's motion and reopen/reinstate this action pursuant to Rule 60(b)(6).  *See Vangjeli v. Banks*, 668 F. Supp. 3d. 400, 405 (E.D. Pa. 2023) ("Courts should only exercise their power under Rule 60(b)(6) in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.  The Court concludes that based upon an assessment of the testimonial evidence and the credibility of the witnesses, all as discussed below, this matter presents such circumstances.") (internal citation and quotation marks omitted).  As discussed, Plaintiff has shown good cause to reinstate her action

because settlement was not reached. And, as discussed below, this case is one of the rare cases where "extraordinary" circumstances are present warranting relief under Rule 60(b)(6). The Court concludes that based upon an assessment of the testimonial evidence and exhibits, as well the credibility of the witnesses, relief under Rule 60(b)(6)—to the extent it applies—is warranted.

The Dismissal Order was a voluntary conditional dismissal order by Court Order pursuant to Federal Rule of Civil Procedure 41(a)(2). Recent Supreme Court precedent appears to suggest that Rule 60(b)(6) applies to the voluntary Dismissal Order without prejudice under Rule 41(a) because the Dismissal Order could qualify as a final proceeding. *See Waetzig v. Halliburton Energy Servs. Inc.*, 145 S.Ct. 690, 696 (2025) ("We hold that a Rule 41(a) voluntary dismissal without prejudice qualifies as a 'final ... proceeding' under Rule 60(b)."); *id.* at 700 ("For the above reasons, a Rule 41(a) voluntary dismissal without prejudice counts as a 'final proceeding' under Rule 60(b). When the requirements of Rule 60(b) are satisfied, a district court may relieve a party from such a dismissal and reopen the case."); *but see Penn West Assoc., Inc. v. Cohen*, 371 F.3d 118, 124 (3d Cir. 2004) (district court erred by applying Rule 60(b) where party sought "a motion to re-open an administratively closed case" but there was no order dismissing the case).

Rule 60(b) provides that a party may seek relief from a final judgment, order, or proceeding based on any of six enumerated factors. Fed. R. Civ. P. 60(b). "Rule 60(b) allows a party to seek relief from final judgment and reopen a case based on mistake or

excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment." *See BLOM Bank Sal v. Honickman*, 145 S.Ct. 1612, 1618 (2025) (citing Fed. R. Civ. P. 60(b)(1)-(5)). "A party seeking relief based on the grounds covered by paragraphs (1) through (3)—*i.e.*, mistake or excusable neglect, new evidence, or fraud—faces a 1-year limitations period." *Id.* (citing Fed. R. Civ. P. 60(c)(1)."). "That time bar, however, does not apply to motions for relief filed under Rule 60(b)'s other paragraphs, including Rule 60(b)(6)." *Id.*

Because Plaintiff's pending *pro se* motion was filed more than a year after the Dismissal Order, relief under Rule 60(b)(1)-(3) is unavailable. In any event, the Court does not find these subsections applicable on the facts of this case, regardless of any time limitations. And although Rule 60(b)(4), (b)(5), and (b)(6) do not contain such time limitations, the Court finds that neither Rule 60(b)(4) nor Rule 60(b)(5) applicable on the facts of this case. Therefore, Soltis can only seek relief under Rule 60(b)(6), providing she sought relief "within a reasonable time." Fed. R. Civ. P. 60(c)(1). As an initial matter, the Court finds that *pro se* Plaintiff sought relief within a reasonable time—approximately 14 months after the Dismissal Order.

"Rule 60(b)(6) is a catch-all provision that authorizes a court to grant relief from a final judgment [or order or proceeding] for 'any … reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 121 (3d Cir. 2014). Courts "are to dispense their broad powers under 60(b)(6) only in 'extraordinary circumstances where, without such relief,

an extreme and unexpected hardship would occur.'" *Id.* (quoting *Sawka v. Healtheast, Inc.*,

989 F.2d 138, 140 (3d Cir. 1993)).  The Third Circuit has "long employed a flexible,

multifactor approach to Rule 60(b)(6) motions." *Id.* at 122 (citations omitted).  "The

fundamental point of 60(b) is that it provides a grand reservoir of equitable power to do

justice in a particular case." *Id.* (internal citation and quotation marks omitted).  Soltis, as

the movant, "bears the burden of establishing entitlement to such equitable relief, which,

again, will be granted only under extraordinary circumstances." *Id.*  This Court "must

consider the full measure of any properly presented facts and circumstances attendant to

the movant's request." *Id.*

Here, it is undisputed that Soltis, proceeding *pro se*, moved to reopen/reinstate her

case within the specified period for doing so.  Although CVS and Lech filed a joint objection

to the motion, (Doc. 48), they took no action whatsoever to move to enforce the purported

settlement agreement until August 30, 2024 (although both counsel for CVS and Plaintiff's

former counsel told Plaintiff this was a distinct possibility as early as January 2020 and CVS

and Lech represented to the Court in the objection that a motion would be forthcoming).

(Doc. 48, ¶13).  The Court finds that Plaintiff filed her Rule 60(b)(6) motion within a

reasonable time and has demonstrated "extraordinary circumstances" warranting the

vacatur of the Dismissal Order and reinstating this action.   The Dismissal Order is dated

November 14, 2019, and the time to reinstate this action was subsequently extended until

January 10, 2021.  (Doc. 46).    Plaintiff's pending *pro se* motion to reopen/reinstate was

filed on January 8, 2021.  Considering the totality of the circumstances, the Court finds

Soltis is entitled to relief because without such relief Plaintiff would suffer an unexpected

and extreme hardship.  Specifically, the Court finds that, absent relief, Plaintiff would receive

no benefit (monetary or otherwise) from the alleged settlement or be forced to accede to

"settlement" of her suit on terms on which she did not agree.  Further, any attempt by

Plaintiff to initiate a new cause of action raising the same claims as are pending herein

would be clearly time-barred.  And as discussed more fully below, the Court cannot enforce

the Term Sheet under Pennsylvania law because the alleged Term Sheet was signed

November 13, 2019 and CVS did not move to enforce the settlement agreement until

August 30, 2024.  Any action for breach of contract seeking specific performance would

clearly be time-barred under Pennsylvania law.  Nor does the Term Sheet comply with

mandatory federal statutory law governing waivers and release of ADEA claims.

Further, the Court finds that Soltis is without fault.  As the testimony at the

evidentiary hearing made clear, Soltis did not want to sign the Term Sheet and asked her

counsel to allow her to take it home with her for review.   Tr. at 213:5-214:11; 216:9-11;

216:12-217:7; 226:4-5; 247:23-248:8; 264:24-265:2.  Plaintiff credibly testified that her

attorneys refused to let her take the Term Sheet home to review and was told by her

attorneys that, as an officer of the Court, Soltis had to sign the Term Sheet now.  *Id.*

Moreover, there are significant differences between the Term Sheet (which Soltis reluctantly

signed because her then counsel told her she had to) and the Settlement Agreement & Release, which Plaintiff did not sign.

The Court finds that failure to reopen/reinstate this case would result in an extreme and unexpected hardship and injustice to Plaintiff. *See O'Brien v. Real Estate Mortg. Network, Inc.*, 2009 WL 2595639, at *2 (D.N.J. Aug. 20, 2009) (granting Rule 60(b)(6) motion, finding that "Plaintiffs would face extreme and unexpected hardship through no fault of their own, if this Court denied them redress for the resolution of their case without reaching the merits"). Plaintiff would be prejudiced by failing to reopen her case, because failing to reopen would render any new suit on these claims time-barred. If the Court declines to reopen her case, it would, as Defendants concede, lack subject matter jurisdiction to enforce the alleged settlement agreement. *See* (Doc. 97 at 3) ("Unless Plaintiff carries this 'heavy burden' . . . this Court need not and cannot address Defendants' Motion to Enforce Settlement for lack of jurisdiction."). If that happened, Plaintiff would receive nothing and her causes of action would be forever time barred. And neither Plaintiff nor CVS could file an independent action in state court seeking to enforce the settlement agreement, because the alleged Term Sheet & Release was executed in November 2019 and any breach of contract action would be time barred. *Cf. Sawka*, 989 F.2d at 140-41 ("Those circumstances are simply not present here, since Sawka may file a separate action on the settlement agreement itself."). This is simply not a case of "buyer's remorse."

In addition, there has been no adjudication on the merits in this case, which under the totality of the circumstances favors granting Rule 60(b)(6) relief. *See Boughner v. Sec. of Health, Educ. & Welfare*, 572 F.2d 976, 979 (3d Cir. 1978) ("Furthermore, the entry of summary judgments precluded an adjudication on the merits of the appellants' claim for benefits, thus constituting the extreme and unexpected hardship"); *see also Logan v. Am. Contract Bridge League*, 173 Fed. App'x 113, 116 (3d Cir. 2006) (noting that in Rule 60(b) cases "we relied heavily on our preference that judgment be rendered on the merits").

The Court further finds that Soltis does not seek relief from a deliberate choice to settle this action. *See Budget Blinds*, *Inc v. White*, 536 F.3d 244, 255 (3d Cir. 2008) ("But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices."). It is undisputed that Plaintiff did not receive any monetary payments or any benefit in connection with the alleged settlement. Tr. at 281:1-4. And the circumstances surrounding the alleged settlement further lead the Court to conclude that extraordinary circumstances are present warranting relief from the Dismissal Order. *See Lee v. Krieg*, 2008 WL 11510035, at *2 (D.N.J. June 16, 2008) ("The absence of a settlement agreement is evidence sufficient to grant relief, pursuant to Rule 60(b)(6). . . . Similarly, courts are to hold pro se litigants to less stringent standards than formal pleadings drafted by lawyers. . . . Therefore, as the Third Circuit stated, Plaintiff should not be deprived of his day in court for his error in attempting to reopen his case."). For example, both Plaintiff and Defendants counsel at the time of the mediation were also

representing different clients and Soltis's mediation was the second one to take place

between counsel that day. Tr. at 110:4-19; 160:15-161"13; 173:1-174:6; 185:4-17; 190:1-7.

Mr. Ripple testified that he prepared both term sheets for both mediations at which Plaintiff's

former counsel represented plaintiff and another litigant pursuing similar claims against

Defendants. Tr. at 145:13-147:2. He also testified that he prepared the Settlement

Agreement & Release that Plaintiff refused to sign. Tr. at 159:1-8.

     In addition, Soltis has consistently timely filed *pro se* motions to reinstate her case

because settlement had not been consummated. (Docs. 30, 47). CVS did not take any

action to enforce the settlement for over four years. Also, there would be little prejudice to

CVS if the Court granted Plaintiff's motion. Discovery in this matter has been extended

once and is now closed. (Doc. 20). All that is left to do is file dispositive motions and, to the

extent those motions fail, proceed to trial.[5]   Moreover, as previously noted, CVS made the

deliberate choice to wait nearly five years to seek enforcement of the Term Sheet.

     "Rule 60 is to be liberally construed in order that judgments will reflect the true merits

of a case." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §

2852 (3d ed. 2012). A review of the totality of the circumstances leads the Court to

conclude that failure to reopen/reinstate Plaintiff's claims would be unjust and inequitable. It

further finds that, failure to reopen/reinstate her action would result in severe and

---

[5]    The Court believes there is little, if any, discovery left to be taken prior to the filing of dispositive motions.

unexpected hardship to Plaintiff for the reasons stated herein.  Accordingly, to the extent

Rule 60(b) is applicable, the Court will grant Plaintiff's *pro se* motion and reopen/reinstate

this action pursuant to Federal Rule of Civil Procedure 60(b)(6).  (Doc. 47).  The Court will

further vacate the Dismissal Order.  (Doc. 28).  A separate Order reopening/reinstating this

action and vacating the Dismissal Order will follow.

### B.    Motion to Enforce Settlement

Now that this litigation has been reinstated, the Court will next addresses

Defendants' motion to enforce settlement.  (Docs. 58, 94).  Plaintiff opposes Defendants'

motion.  (Docs. 68, 93).

### 1.    CVS Failed to Meet its Burden to Show This Court Has Jurisdiction

Before addressing the merits of Defendants' motion to enforce settlement, the Court

first must satisfy itself that it has subject matter jurisdiction over Defendant's motion to

enforce settlement.  The Court raised the issue of its subject matter jurisdiction *sua sponte*

and directed the parties to file supplemental briefing.  (Doc. 95).  Plaintiff state this Court

does not have jurisdiction to address CVS's motion to enforce.  (Doc. 98).  CVS, in contrast,

says that this Court has subject matter jurisdiction if, and only if, it grants Plaintiff's motion to

reopen/reinstate.  *See* (Doc. 97 at 1-4) ("This Court Need Not and Cannot Consider

Defendants' Motion to Enforce Settlement *Unless* Plaintiff First Establishes Her Burden to

Reopen this Case Under Rule 60 of the Federal Rules of Civil Procedure.").   It is CVS's

23

burden to establish that this Court has subject matter jurisdiction.[6]  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited [subject matter] jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").  Although the court has federal question jurisdiction over Plaintiff's claims, the parties are not diverse, and the Court did not retain jurisdiction to enforce the Term Sheet in any Order.  *See Schutjer Bogar LLC v. Hayes*, 2014 WL 12787222, at *3 (M.D. Pa. May 19, 2014) (court lacked subject matter jurisdiction to enforce settlement, noting "relief from [dismissal] order would not have the effect of enforcing the settlement agreement but would instead return the parties to the legal battlefield of the original case.").  Moreover, the Supreme Court has "reasoned that reopening a case under Rule 60(b) would not automatically confer jurisdiction over a subsequent motion to enforce a settlement agreement.  The upshot of our analysis in *Kokkonen* was that, even though Rule 60(b) might give a court the power to reopen a case, the Rule cannot itself serve as the basis for federal jurisdiction."  *Waetzig*,145 S.Ct. at 698.

---

[6]      Although the Dismissal Order has now been vacated, the Court never retained jurisdiction over this matter to enforce settlement, and CVS did not file any motion to enforce until August 30, 2024.  Other courts in this Circuit have contemplated dismissal orders that specifically retain jurisdiction to enforce a settlement agreement after dismissal if a party moves to reopen/reinstate the action consistent with the terms of Rule 41(a)(2) dismissal order.  *See, e.g., Strategic Alliance Grp., LLC v. Consol. Tech., Inc.*, 2009 WL 1635390, at *2 (D.N.J. June 10, 2009) ("Pursuant to the Order of Dismissal, this action 'was dismissed without costs and without prejudice to the right, upon motion and good cause shown within 90 days, to reopen this action if the settlement is not consummated'. . . Further the Order provided that 'if any party shall move to set aside this Order of Dismissal as provided in the above paragraph or pursuant to the provisions of Fed. R. Civ. P. 60(b), in deciding such motion the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties'").  That is not the case here.

"Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378; *see Shaffer*, 284 F.3d at 503 (reinstatement of action "which revives the underlying claim and sends the litigants back to the original battlefield, is totally different from the enforcement of the terms of a settlement agreement because one of the parties has not complied with those terms."). Although this action has been reinstated, that is "totally different" from the enforcement of the terms of the alleged settlement agreement. *Shaffer*, 284 F.3d at 503. Thus, the Court does not agree with CVS that because the Dismissal Order has been vacated, it necessarily implies that this Court has subject matter over the enforcement of the alleged Term Sheet. The cases cited by CVS are inapposite. And CVS fails meet its burden to establish that this Court has subject matter jurisdiction over CVS's motion to enforce.[7]

### 2. **The Term Sheet** *is Not an Enforceable Contract*

Although this Court finds that CVS failed to meet its burden demonstrating the Court has subject matter jurisdiction to enforce the Term Sheet, it will nevertheless proceed to address the merits of CVS's motion out of an abundance of caution. "The enforceability of

---

[7]    In *Mood v. Encore Kitchen & Bath Distribut., Inc.*, 2011 WL 204186 (E.D. Pa. Jan. 20, 2011), a case relied on by CVS, the Court did not issue a memorandum opinion setting forth its reasoning. Instead, the Court merely issued an Order modifying its dismissal Order, dismissed the case based on a settlement, and explicitly retained jurisdiction to enforce any settlement agreement. That is not comparable to the case at bar and does not satisfy CVS's burden to demonstrate subject matter jurisdiction.

settlement agreements is governed by principles of contract law." *Mazzella v. Koken*, 559

Pa. 216, 224, 738 A.2d 531 (1999).  "To be enforceable, a settlement agreement must

possess all of the elements of a valid contract." *Id.*  "As with any contract, it is essential to

the enforceability of a settlement agreement that the minds of the parties should meet upon

all the terms, as well as the subject-matter of the agreement." *Id.* (internal citation and

quotation marks omitted).  "For a contract to be enforceable, the nature and extent of the

mutual obligations must be certain, and the parties must have agreed on the material and

necessary details of their bargain." *Lacker v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006).

Put differently, "[i]t is black letter law that in order to form an enforceable contract, there

must be an offer, acceptance, consideration or mutual meeting of the minds." *Jenkins v.

Cnty. of Schylkill*, 441 Pa. Super. 642, 648 (1995); *see also East Penn Township v. Swartz*,

304 A.3d 116, 128 (Pa. Commw. 2023) ("Therefore, to be enforceable, a settlement

agreement must possess the elements of a valid contract:  offer, acceptance and

consideration; and there must be a mutual meeting of the minds.").  Although it is

undisputed that Plaintiff signed the Term Sheet, "[s]ignatures are not dispositive evidence of

contractual intent" under Pennsylvania law. *Am. Eagle Outfitters v. Lye & Scott, Ltd.*, 584

F.3d 575, 584 (3d Cir. 2009).

As the party seeking to uphold the Term Sheet, CVS bears the burden to prove the

existence of an enforceable contract. *Am. Eagle Outfitters*, 584 F.3d at 582 n.6.  Based

upon a review of the language of the Term Sheet, the testimony at the evidentiary hearing,

and of the exhibits, it is apparent to the Court that Term Sheet never became an enforceable contract because the parties objectively did not have a meeting of the minds as to all the materials terms of the agreement. *See Newlan v. Norfolk Southern R.R. Co.*, 2019 WL 13211877, at *3 (W.D. Pa. Dec. 19, 2019) ("Here, the release and settlement agreement never became an enforceable contract because the parties did not mutually assent to the agreement. Although Defendant tendered a settlement offer to Plaintiff, Plaintiff never accepted the offer. Plaintiff's counsel statement that 'Newland is settled at [dollar amount]' was not an acceptance of the settlement offer because Plaintiff did not assent to all of the material terms of the agreement. Plaintiff only assented to one material term, the settlement dollar amount. The communications between the parties do not indicate that Plaintiff ever agreed to the terms of the release, particularly its breath. There was no meeting of the minds on all of the terms of the settlement agreement. . . . Further, Plaintiff stated that the agreement had not been consummated, indicating that he had not yet assented to the terms of the release."); *see also Sang Koo Park v. Evanston Ins. Co.*, 2021 WL 5399908, at *3 (E.D. Pa. Nov. 18, 2021) ("Likewise, where the initial efforts memorializing draft agreements between parties differ dramatically on the essential terms, the agreement will be deemed unenforceable."); *Lee v. Mariei*, 2021 WL 1737571, at *4 (M.D. Pa. May 3, 2021) ("Without evidence establishing the essential terms of the settlement, or whether those terms were discussed prior to the alleged acceptance, we cannot find an enforceable settlement agreement."); *Urbanski v. Bayada Home Health Care*,

2017 WL 3077036, at *5 (M.D. Pa. July 19, 2017) ("As such, given the record presented, the Court concludes that the parties failed to achieve a meeting of the minds as to the material terms of the agreement, which precludes its enforcement.").

The same logic applies here and compels a finding that, based on the plain language of the Term Sheet and the totality of the circumstances, including the testimony of the witnesses and the exhibits, no enforceable contract was formed at the mediation because there was no objective meeting on the minds as to all material terms of the Term Sheet.  Moreover, had the parties reached an enforceable agreement by execution of the Term Sheet there would be little reason, as Ms. Vanguri testified, to submit redline edits of the Settlement Agreement & Release.  Tr. at 61:13-24; 66:2-14; *see Boyd v. Cambridge Speakers Series, Inc.*, 2010 WL 2545541, at *6 (E.D. Pa. June 18, 2010) (denying motion to enforce settlement agreement, noting the parties' communications "reveal that the parties consistently behaved as if they were engaged in negotiation, and not as if an agreement had been finalized").

### 3.  Even if the Term Sheet is Enforceable, The Court Would Not Enforce

Even assuming, *arguendo*, that the Term Sheet is an enforceable contract, the Court would nevertheless decline to enforce it.  *See Ecore Int'l Inc. v. Downey*, 343 F. Supp. 3d 459, 486 (E.D. Pa. 2018) (concluding that the alleged agreement "is not a valid, enforceable contract" and further finding that "even if the alleged [contract] existed and was enforceable, Downey's claims are barred by the statute of limitations.").  "It is well-established that three

elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, PLLC v. Law Firm of Malone Middleman, P.C.,* 635 Pa. 427, 445, 137 A.3d 1247 (2016). Contract claims are subject to a four-year statute of limitations in Pennsylvania. 42 Pa. C.S.A. § 5525(8). Specific performance of a contract—here, the Term Sheet, is guided by principles of equity and also subject to a four-year statute of limitations. *See Selective Way Ins. Co. v. Hospital Grp. Servs., Inc.,* 119 A.3d 1035, 1047 (Pa. Super. 2015). Therefore, even assuming the parties entered into an enforceable contract with the Term Sheet, the Court would still deny CVS's motion to enforce the Term Sheet as untimely.

CVS's motion to enforce is untimely under Pennsylvania law.[8] *See Tulio v. Borough*, 2023 WL 8711822, at *1 (3d Cir. Dec. 18, 2023) ("Likewise, he should have brought his breach-of-settlement claim within the four-year statute of limitations. He is thus out of time."); *see also Downey*, 343 F. Supp. 3d at 486 (concluding that the alleged agreement "is not a valid enforceable contract" and further finding that "even if the alleged [contract] existed and was enforceable, Downey's claims are barred by the statute of limitations."). "Under Pennsylvania law, contract actions are subject to a four (4) year statute of limitations." *Pratts v. State Farm Fire & Cas. Co.*, 2019 WL 1952875, at *5 (M.D Pa. May 2, 2019) (citing 42 Pa. C.S.A. § 5525); *see also Horowitz v. Horowitz*, 600 A.2d 982 (Pa.

---

[8]    All parties, and the Court, agree that Pennsylvania law governs CVS's motion to enforce.

Super. 1991) (statute of limitations can serve as a legal defense against petitions to enforce settlement agreements).

Here, CVS waited nearly five years after the Dismissal Order to file a motion to enforce the settlement. It could have done so earlier but, for whatever reason, did not move to enforce until August 30, 2024. Put differently, CVS knew, or should have known, that the motion for enforcement of the settlement agreement (*i.e*, breach of contract claim seeking specific performance) accrued no later than January 27, 2020, when CVS became aware that Plaintiff would not sign the Settlement Agreement & Release. *See Kessock v. Conestoga Title Ins. Co.*, 194 A.3d 1046, 1056 (Pa. Super. 2018) ("In a contract case, a cause of action accrues when there is an existing right to sue forthwith on the breach of contract."); Pl. Ex. 3 (January 27, 2020 email from counsel for CVS to counsel for Plaintiff, noting that "Please advise the Plaintiff that if we have not heard back from her by this Friday with any willingness to discuss the outstanding issues, we will proceed with drafting a motion to enforce the settlement term sheet signed by all of the parties at the mediation in November"); Tr. at 39:12-40:7; 163:163:11-164:1; 165:7-12; 168:13-15. Indeed, CVS could not maintain an independent action in state court to enforce the settlement agreement because that action would clearly be time-barred under Pennsylvania law.[9] This is true as

---

[9]     *See* 42 Pa. C.S.A. § 5525 (four-year statute of limitations for breach of contract); *see also Selective Way Ins. Co. v. Hospital Grp. Servs., Inc.*, 119 A.3d 1035, 1047 (Pa. Super. 2015) ("This Court has held that the four-year catchall statute of limitations is appropriate for declaratory judgment actions regarding the parties' rights and duties under a contract.").

of the date of this writing and was also true when CVS filed the motion to enforce on August 30, 2024—seeking to enforce the November 13, 2019 Term Sheet.

A "party who has 'slept too long on its rights' cannot seek specific performance." *House of David Preservation*, *Inc. v. Guild House West, Inc.*, 2015 WL 6550624, at *2 (E.D. Pa. Oct. 29, 2015) (quoting *In re Kutz's Estate*, 103 A. 293, 295 n.2 (Pa. 1918)).  CVS slept too long on its rights and is not entitled to specific performance of the Term Sheet.  Its motion seeking enforce the Term Sheet is time-barred under Pennsylvania law.

### 4.  **Plaintiff Did Not Waive Her Discrimination Claims**

Because the Court has concluded that the Term Sheet is not enforceable, it need not determine whether Plaintiff waived her discrimination claims.  Nevertheless, for the sake of completeness and because the parties' briefs focus so much on the issue, the Court will address the parties' arguments regarding a federal statute governing the release of claims under the ADEA.  That statute, the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), applies because the Term Sheet purports to release and waive claims under the ADEA.[10]  "Pursuant to the OWBPA, an individual cannot waive any ADEA right or claim unless the waiver is 'knowing and voluntary.'"  *Warren v. Mastery Charter Schs.*, 312 F. Supp. 3d 456, 460 (E.D. Pa. 2018).  "To be knowing and voluntary under the OWBPA, a release must satisfy the statutory requirements set forth in the statute."  *Id.*  CVS, as the

---

[10]     Federal regulations also apply to waiver of ADEA claims.  *See* 29 C.F.R. § 1625.22 (Wavier of rights and claims under ADEA).

party asserting the validity of the waiver, bears the burden of demonstrating the Plaintiff

knowingly and voluntarily released her ADEA claim. *See* 29 U.S.C. § 626(f)(3) ("In any

dispute that may arise over whether any of the requirements, conditions, and circumstances

set forth in subparagraph (A), (B), (C), (D), (E), (F), (G), or (H) of paragraph (1), or

subparagraph (A) or (B) of paragraph (2), have been met, the party asserting the validity of

a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver

was knowing and voluntary pursuant to paragraph (1) or (2)."). As the Supreme Court

recognized in *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-28 (1998):

> The statutory command is clear: An employee "may not waive" an ADEA claim unless
> the waiver or release satisfies the OWBPA's requirements. The policy of the OWBPA
> is likewise clear from its title: It is designed to protect the rights and benefits of older
> workers. The OWBPA implements Congress' policy via a strict, unqualified statutory
> stricture on waivers, and we are bound to take Congress at its word. Congress
> imposed specific duties on employers who seek releases of certain claims created by
> statute. Congress delineated these duties with precision and without qualification: An
> employee "may not waive" an ADEA claim unless the employer complies with the
> statute. Courts cannot with ease presume ratification of that which Congress forbids.
>
> The OWBPA sets up its own regime for assessing the effect of ADEA waivers,
> separate and apart from contract law. The statute creates a series of prerequisites for
> knowing and voluntary waivers and impose affirmative duties of disclosure and waiting
> periods. The OWBPA governs the effect under federal law of waivers or releases of
> ADEA claims and incorporates no exceptions or qualifications.

Because this case was filed in court, the requirements of 29 U.S.C. § 626(f)(2) apply,

contrary to Plaintiff's position that 29 U.S.C. § 626(f)(1) applies. The relevant statute

provides:

> (2) A waiver in settlement of a charge filed with the Equal Employment Opportunity
> Commission, or an action filed in court by the individual or the individual's

representative, alleging age discrimination of a kind prohibited under section 623 or 633a of this title may not be considered knowing and voluntary unless at a minimum-

> (A) subparagraphs (A) through (E) of paragraph (1) have been met; and
> (B) the individual is given a reasonable period of time within which to consider the settlement agreement.

Subparagraph (A) through (E) of paragraphs (1) provide the following:

> (1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum--
> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> (B) the waiver specifically refers to rights or claims arising under this chapter;
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement.

29 U.S.C. § 626(f)(1)(A)-(E).

The Term Sheet CVS seeks to enforce is one-and-a-half pages long and contains seven paragraphs. The Term Sheet, however, does not comply with the mandatory federal statutory requirements under the OWBPA.[11]  *See Potoski v. Wilkes Univ.*, 2010 WL

---

[11]  Plaintiff's former counsel, Ms. Vanguri, acknowledged that the OWBPA applies in this matter. Tr. at 24:9-22. And she further acknowledged that the Term Sheet did not include certain mandatory language required by the OWBPA. Tr. at 24:23-25:2. However, she did not have an issue with the Term Sheet because such OWBPA language was not, in her view, a material term of the Term Sheet. Tr. at 25:3-11. However, the OWBPA was in the Settlement Agreement and Release that Plaintiff subsequently refused to sign. Tr. at 25:12-25:25. Moreover, Plaintiff's former counsel Mr. Gold also testified about the OWBPA, noting that if the Term Sheet did not contain certain provisions "it might not been an effective waiver." Tr. at 122:17-25. Mr. Gold further testified that because the Term Sheet did not contain the mandatory language required by the OWBPA, Soltis "had a right to rescind the agreement." Tr. at 125:11-20; Tr. at 137:18-138:19. Mr. Ripple, counsel for CVS who drafted the Term Sheet, acknowledged that the Term Sheet didn't contain certain

3811973, at *13 (M.D. Pa. Sept. 22, 2010) ("Upon the court's review of the release agreement, it is clear that it does not comply with the requirements of the Older Workers Benefit Protection Act."); *see also Bogacz v. MTD Prods., Inc.*, 694 F. Supp. 2d. 400 (W.D. Pa. 2010) (same); *Fortunato v. Nestle Waters North Am.*, 2011 WL 4499295 (E.D. Pa. Sept. 29, 2011) (same); *Freeman v. Pittsburgh Glass Works, LLC*, 2011 WL 832897 (W.D. Pa. Mar. 3, 2011) (same).

As an initial matter, the Court finds the Term Sheet fails to comply with 29 U.S.C. § 626(f)(1)(B), which is incorporated under 29 U.S.C. § 626(f)(2)(A), because it does not "specifically refer to rights or claims arising" under the ADEA. *Id.* Rather, the Term Sheet simply provides that "Plaintiff agrees to release Defendants against all claims whatsoever that were asserted or could have been asserted in the lawsuit." (Doc. 58-2 at ¶ 3). There is no specific mention whatsoever of the ADEA. *See Freeman*, 2011 WL 832897, at *3 ("Here, Plaintiff's waiver did not include any specific mention of the ADEA or OWBPA as required."); *see also Johnson v. Veneman*, 569 F. Supp. 2d 148, 157 (D.D.C. 2008) (no waiver under OWBPA where document "makes no specific reference to waiving ADEA claims").[12]

_____

language required by the OWBPA, but testified that "it's not a non-monetary term that I felt needed to be included." Tr. at 158:2-14. He further testified (referencing the OWBPA language in the Term Sheet) that he didn't "know why it wasn't included." Tr. at 158:15-21.

[12]    Plaintiff argues, incorrectly, that she had 21 days to review the Term Sheet and 7 days to revoke the Term Sheet pursuant to the OWBPA. *See Wu v. Haaland*, 2021 WL 2836457, at *3 (10th Cir. July 8, 2021) ("Under that Act, waiver through settlement of a court action is 'knowingly and voluntarily only upon satisfaction of 'subparagraphs (A) through (E) of paragraph 1.' But there's nothing to require satisfaction of

Moreover, the Term Sheet also fails to comply with 29 U.S.C. § 626(f)(2)(B) because the Court finds that Plaintiff was not "given a reasonable period of time within which to consider the settlement agreement." *Id.* "The term 'reasonable time within which to consider the settlement' means reasonable under all the circumstances, including whether the individual is represented by counsel or has the assistance of counsel." 29 C.F.R. § 1625.22(g)(4). CVS argues that the fifteen minutes was reasonable under the circumstances because Soltis was represented by counsel at the mediation, and cites *Gregory v. Derry Township School District*, 418 Fed. App'x 148 (3d Cir. 2011), in support. (Doc. 94 at 23-24). *Gregory* is inapposite.[13] It does not involve an ADEA claim or a waiver

---

subparagraphs (F) and (G), which set forth the time periods to consider a settlement and revoke it.") (quoting 29 U.S.C. § 626(f)(2)); *see also Michelen v. IEEE GlobalSpec*, 2022 WL 16557968, at *2 (2d Cir. Nov. 1, 2022) ("Neither provision applies to this case. Instead, § 626(f)(2) is applicable, because it covers action[s] filed in court ... alleging age discrimination.... Section 626(f)(2)(A) explicitly excludes the 21-day consideration period and the seven-day revocation period by stating that a settlement waiver is not knowing and voluntary unless, at a minimum, subparagraphs (A) through (E) of § 626(f)(1) have been met. It does not cross-reference subparagraphs (F) and (G). Instead, it provides only that an individual be given a reasonable period of time ... to consider the settlement agreement.") (internal citation and quotation marks omitted). Plaintiff thus never had a right to revoke the Term Sheet. Rather, she is statutory entitled to a "reasonable period of time within which to consider the settlement agreement." 29 U.S.C. § 626(f)(2)(B).

[13]    The other cases CVS cites in support of their argument that fifteen minutes is a reasonable amount of time to consider under the OWBPA, are two out of Circuit district court case from the Middle District of Florida and the District of Massachusetts. *Saettele v. Maronda Homes, Inc. of Florida*, 2010 WL 11520172 (M.D. Fla. Sept. 7, 2010); *Eswarappa v. Shed Inc./Kid's Club*, 685 F. Supp. 2d 229 (D. Mass. 2010). In *Saetelle*, the Magistrate Judge found that the plaintiff had a reasonable time to consider the settlement agreement where the plaintiff "had a minimum of fourteen days to fully consider the settlement." *Id.* at *6. Similarly, in *Eswarappa*, the Magistrate Judge found that the plaintiff had a reasonable time to consider the settlement where the plaintiff "participated in the give-and-take of the negotiations under the guidance of a magistrate judge to reach the terms of the settlement agreement, and then agreed to those terms in private with Judge Bowler and again in the courtroom with all parties and Judge Bowler in attendance." *Id.* at 237. The material facts of this case bear no similarity to those cited by CVS and the cases cited are therefore not persuasive.

of an ADEA claim. Rather, it concerned a racial discrimination case applying the totality of

the circumstances test under federal common law to determine whether the plaintiff

knowingly and voluntarily waived her Section 1981 and Section 1983 racial discrimination

claims. Plaintiff's ADEA claim, however, is governed by a federal statute. 29 U.S.C. §

626(f). And the Court finds, based on the totality of the circumstances, that Plaintiff did not

knowingly and voluntarily waive her ADEA claims. Stated differently, CVS failed to meet its

burden to prove Plaintiff knowingly and voluntarily released her ADEA claims under the

OWBPA because even if the Term Sheet is enforceable, it did not comply with the statutory

mandates of the OWBPA. Fifteen minutes was not a reasonable period of time under the

totality of the circumstances.[14]

---

[14]    Nor did Plaintiff knowingly and voluntarily waive her ADA and PHRA claims. Because the Court has
already found that the Term Sheet is not an enforceable contract, it need not address whether Plaintiff waived
her ADA and PHRA claims. Nevertheless, the Court finds that, based on the totality of the circumstances,
including the plain language of the Term Sheet, Plaintiff did not waive her ADA and PHRA claims. "An
employee may release employment discrimination claims against an employer so long as the release is made
'knowingly and willfully.'" *Warren*, 312 F. Supp. 3d at 460 (quoting *Coventry v. U.S. Steel Corp.*). "Whether
such a release is knowing and willful is determined by the totality of the circumstances test." *Id.* Under the
totality of the circumstances test, "the following factors are considered: (1) the clarity and specificity of the
release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had
for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his or her
rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received the
benefit of counsel; (6) whether there was an opportunity for negotiation of the terms; (7) whether the
consideration given in exchange for the release and accepted by the employees was already entitled by
contract or law." *Id.*

    Here, although some of these *Coventry* factors are neutral or favor CVS, the Court finds that factors
(3), (4), (5), and (7) weigh in favor Plaintiff and compel a finding that Plaintiff did not knowingly and voluntary
release her ADA or PHRA claims. *See Andrew P v. Bucks Cnty. Intermediate Unit*, 2001 WL 1716993, at *4
(E.D. Pa. Dec. 10, 2001) ("The Court finds, in consideration of the totality of the circumstances, the October
25, 1997 settlement agreement does not constitute a knowing and voluntary waiver"). The Court further finds
fifteen minutes was not a reasonable time for deliberation based on the totality of the circumstances, including
Plaintiff's then attorney proceeding to mediation despite knowing there was a clear conflict of interest.

In sum, the Court will grant Plaintiff's motion to reopen/reinstate this action. The Dismissal Order will be vacated and this action will be reinstated. Defendants' motion to enforce the Term Sheet will be dismissed for lack of subject matter jurisdiction, as CVS has not carried its burden to demonstrate that this Court has subject matter jurisdiction over the motion to enforce the Term Sheet. To the extent the Court has subject matter jurisdiction over CVS's motion to enforce the Term Sheet, it would deny the motion on the merits for the reason discussed herein.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion to reopen/reinstate and will deny CVS's motion to enforce. Separate Orders follow.

Robert D. Mariani
United States District Judge

---

Moreover, it is unclear what consideration was given in exchange for the Term Sheet—as the amount is redacted and it is undisputed that Plaintiff has not received any benefit (monetary or otherwise) from the Term Sheet and this case remains pending. To the extent Plaintiff's PHRA claim is not governed by the *Coventry* factors, *see Potkoski*, 2010 WL 3811973, at *13, the Court concludes that, under Pennsylvania law, Plaintiff did not waive and release her PHRA claims. The ordinarily language of the release is not sufficiently specific regarding waiver and release of the PHRA claims. And, in any event, CVS's motion to enforce is time-barred.